Counsel, you may proceed. Thank you, Your Honor. May it please the Court, my name is Brent Dorian Brame and I represent Plaintiff Appellant Debra Cerone. If I may, I'd like to reserve four minutes for rebuttal. Keep your eye on the clock, Counsel. Okay, thank you. The question before the Court is whether the policy exclusion for acute or chronic alcoholic intoxication is ambiguous. The policy does not define any of these words. Plaintiff offered one interpretation she claims is reasonable. Reliance, who wrote the policy, has offered two different interpretations, each time claiming the current interpretation was the only reasonable one. The District Court rejected both parties' interpretations and the claim that the exclusion is ambiguous before applying a fourth interpretation. Of the multiple interpretations, only plaintiff's as long as it is not unreasonable. So, do you have to, in order to prevail, do we need to review this de novo? The standard review is de novo because this is a contract interpretation issue. Well, okay, you argue that the District Court's interpretation that Mr. Cerone was acutely intoxicated under the policy should be reviewed de novo, but how can we reconcile our other ERISA cases in which we have held that the interpretation of contractual terms, for example, whether someone is disabled is reviewed for clear error, munos versus amic construction management? Well, first, the parties didn't raise that, but if you look to the Vought v. Scottsdale health corporate insurance plan, this Court, in an ERISA case, said that ERISA policies are reviewed de novo if it's a policy language interpretation. The case you're referring to, I don't know offhand, and I don't know whether it was actually limiting its review to actually the definition of disability, or whether it was reviewing the factual findings that they claim it was disabled under that definition. Well, did the District Court here review any factual evidence in interpreting the contract? It did not review any factual evidence in reviewing the contract. Well, would you concede if it did that then that requires a different standard of review? No, I would say that contract interpretations are questions of law, and those questions of law are interpreted de novo. What the Court did is it turned to dictionary definitions, and those can be readily... Okay, but if the District Court reviewed factual evidence to interpret the contractual terms, does that require a different standard of review? So, and here I don't believe the Court actually reviewed any factual evidence to interpret the terms. The Court interpreted the terms and then reviewed the facts to apply them to those terms as interpreted. All right, what's the best... Now, I know that there's, and I'm going to ask the other side, there's a lot of cases that talk about acute that are, they're in the area of like 2.2, 3.2, 1.9. Is there any case that goes this low to find acute? I found no cases that went below 0.16, I believe, so that's over twice as high as Mr. Cerone's, and Reliance has provided no authority whatsoever from any court in a published or unpublished case showing the term acute alcoholic intoxication approach in this level, and since... So, the contract doesn't define acute, the agreement doesn't define acute, right? Correct. None of the terms at issue today are defined by the contract, nor does the contract provide any context or examples for how to interpret these terms, so... Does this come up a lot? This actual issue, I believe, has never come up. I did not find a single case that was interpreting a term for acute or alcoholic intoxication, so... But here the terms are acute or chronic, right? The terms in the exclusion are acute or chronic alcoholic intoxication. Only acute alcoholic intoxication as issue. That was the basis for the denial. The district court recognized that acute alcoholic intoxication was the standard for being the determination. What the court did is it found that the way to find the meaning of acute alcoholic intoxication was by looking at it in the context that it was written in the policy, which is next to chronic, and since chronic has some definitions on a temporal alone basis, that means it's not acute, the district court determined, well, that acute must mean not chronic, and of course, as we advance the argument, by doing this, limiting them both to their temporal basis, it renders both terms meaningless, because you are left with just an intoxication exclusion. So what should the definition of acute be? The definition of acute, we advance, is very severe, so intense. So when you have intoxication, when you combine it with intoxication, it's modifying intoxication, so not... Intoxication isn't enough. You need to have very severe intoxication, and this is the way the term is ordinarily and commonly used in all of the cases that we cited. The blood alcohol contents are quite high. In fact, they're multiple times higher than the 0.08% BAC that is commonly known across the country for intoxication. So this is the... Counsel? Go ahead, Judge Rawlinson, I'm sorry. Do we have to use the blood alcohol definition in resolving this issue? Can we use a dictionary definition? You can use a dictionary definition, but plaintiff offers that it's reasonable to use the 0.08% blood alcohol content level, and because that is a reasonable interpretation, and in fact, it is possibly the most appropriate one, because as this court said in Harlech, policy terms can be interpreted if they have... policy terms with a well- Here, Mr. Cerone was driving a non-commercial vehicle. He was in California. The policy is governed by California, and California has a driving while intoxicated law that sets a 0.08% intoxication definition, so it's very reasonable to apply that 0.08% definition here. Mr. Cerone, with a 0.06% to 0.07% blood alcohol level, does not meet the 0.08% level, and then when we add an acute to the meaning... Did the district court define it in terms of blood alcohol? The district court did not define it in terms of blood alcohol content. So we're reviewing the district court decision, and what's our standard of review regarding whether or not the district court properly interpreted the policy? That's a de novo review. The district court's interpretation of contract language is review de novo. Well, if the district court also found this was ambiguous, correct? And as I understand your argument, you're saying it's ambiguous besides because you're offering one view that you feel is reasonable. I think... I believe that the appellees offered another view, and then the district court came up with its own view, right? Correct, and then I believe that the appellees adopted the version of the district court. Of course, any smart lawyer would, if you see it going in the right direction. I would actually respectfully disagree there, because Reliance Standards is a fiduciary. It has fiduciary standards and obligations to dispatch its duties with the utmost standard of truthfulness and honesty, and it wrote this policy... Could Reliance have written... Could Reliance have defined acute, or could Reliance have written a policy that said if you have any alcohol in... Any alcohol or drugs in your system, you don't get the accidental death benefit? Absolutely, it could have, and it should have been clear if that was the end of the parties, and in our briefs, plaintiffs cites to a number of different versions of alcoholic intoxication exclusions, one of which does have a threshold that says if you have any intoxicating liquor in your system at all, the exclusion applies. Others, a much more common version, say they will apply the presumptive level of intoxication to the state in which the death occurs, and then others actually have an express BAC level, which is also quite clear, such as one we offer as a 0.15 blood alcohol percentage. Counsel, you haven't used the term contrapreferendum, which is a can of construction and insurance policies. Would it make any difference, with respect to application of that approach, if we disagreed with you on the standard of review? Well, the standard of review for contract interpretations, I believe, is de novo. When you're talking about the standard of review that might have applied to the decision of the reliance, because in ERISA there's often this split between de novo review and abusive discretion reviews, and contrapreferendum, this court has found, doesn't apply in abusive discretion reviews. But as it applies to the district court, no, I believe contrapreferendum would apply, because this court is, at least plaintiff is advancing, is reviewing a contract interpretation, and those are reviewed de novo, so the rule of contrapreferendum continues to apply. You suggested that the term acute would be something excessive or extreme. What about sudden? If the comparison is between acute and chronic, and chronic being something that is continuous, acute perhaps being of sudden onset, would that make a difference? Well, I don't think that, what you said there, which I think is key, is that acute in comparison to chronic, and there's no principle of contract interpretation that requires acute here to be interpreted in context with chronic. In fact, this court in Patterson reviewed a disjunctive exclusion for mental, emotional, and nervous disorders, and only at issue there was headaches, and whether that was a mental disorder. And in Patterson, this court looked at mental disorders, never reviewed the other two terms to settle on a meaning of mental disorder. So I don't think that acute needs to be read in conjunction with chronic. However, here the district court did that by turning to a dictionary definition, and unfortunately I think it led to a definition that rendered the terms meaningless, because its reading on the temporal timeline becomes just an intoxication exclusion. And I see, if I want to reserve time... Yes, you may do so, counsel. You may reserve your time. Okay, thanks. We'll hear from the company. May it please the court. Good morning, Joshua Bachrach. I represent defendant Appelli, Reliance Standard. And just quickly addressing a question by Judge Acton Law, then it is still reviewed for clear error. And I think that's the case in the case that you brought up, and I think it's also here where you can't just take it completely out of context. The court was interpreting intoxication in the context of the language and the policy, but also with respect to Mr. Cerone's condition. The court was looking at acute or chronic in connection with the language that was presented here. And that's the big problem that the plaintiff has here, is you cannot read acute separate from acute or chronic. That's the language in the policy, and there's a disjunctive conjunction. And I thank the district court for it. Well, I guess though, but I guess here's the problem that I have with your argument, and I'd like you to address it. Because when I first looked at it, you know, I mean, it has to somehow put the person on notice, correct? It In California, you wouldn't be arrested necessarily for a crime. You have the .08. I believe that, back to my old days as a prosecutor, I believe that California also has an enhancement where it's something like if it's a 2.0 or above, that that's an additional, because that's not only considered to be under the influence, that's considered to be like uber drunk, as it were, or uber under the influence. I mean, how would someone in California, when, you know, I think most drivers, you know, you have it as part of the driver's test, you know that a .08 is going to put you into troubled ground. You know, how are they on notice that something that's under that would be considered acute? Well, acute, you're talking two different, that's their interpretation. Acute means severity. Well, I know, but they have that interpretation. Then we go to a dictionary. Then the district court came up with it. I don't see how it can be unambiguous. I'll explain. Your Honor, first of all, counsel's wrong in saying that now we've adopted this alternative. We adopted what the district court said. In our opposition to their summary judgment, we said acute means severe, means sudden onset. So we did that before there was the judgment. And more importantly, it doesn't matter what I said. It doesn't matter what counsel said. The district court was reviewing this de novo and came up with an interpretation. So you have to look at acute or chronic. But is there any case that's that low that says it's acute? But again, you're looking at the intensity. You're defining acute to mean intensity, not temporal. All right, but you could have said in your policy that acute meant temporal and acute meant .08 or acute meant any alcohol, right? Well, here's the thing. It doesn't include the .08. It doesn't include the look at your state driving law because it applies to any loss to which intoxication's a cause. But then the problem is defining intoxication. Well, there aren't really problems because a reasonable person, what the district court did was it looked at dictionaries. It looked at what a reasonable person would consider. And a reasonable person looking at intoxication doesn't think, oh, .08, I must be, you know, the dictionary. But am I an unreasonable person because I'm thinking the other way? No, I think you have to look at the context of it. And without any reference to driving, in fact, there's a court decision that said that the plan was wrong to impute into the policy a state's legal limit when the policy itself didn't do so. And here, this policy doesn't limit itself to drunk driving, to intoxicated driving. It's any intoxication which causes a loss. So it wouldn't make sense to put in the state limit. So it could be a .02 then? If this isn't a status. That's the other important thing. Council said that we could have put language in there that said if you hit this level, you don't get benefits. That's called a status exclusion. And that's not even permitted for intoxication in California. You have to have this causation. And so what we're saying is if you're intoxicated and it causes the accident, then... But a .02 and causing the accident would be acute from your interpretation. Is that correct? They drank the alcohol just before the collision. But the issue is intoxication. And drinking the alcohol before the event may or may not have any effect on intoxication. Well, you know, it's interesting. And I'd love to... I did the research and I couldn't find the case because I'm sure it's years old. Certain years ago, somebody said, oh, this intoxication exclusion is ambiguous because it doesn't state whether the intoxication is acute or chronic. And now we have council saying, well, it says acute or chronic, so it's ambiguous because it could be either one and it's superfluous because it is redundant. No, it is comprehensive. Just because language is comprehensive doesn't mean that it's ambiguous. It means we're trying to say acute or chronic. It doesn't matter if you had drank over an extended period of time or you just got drunk right then and there. It applies. Because there are cases in which people, by the way, chronic alcoholics will not have had a drink in hours, hours and hours, and yet their level of alcoholism is still so high that they're impaired and they're drunk, intoxicated. And so this language is making it clear that it doesn't matter temporally when you became intoxicated. As long as that intoxication caused the loss, it's not going to be covered. And so in this case, the court correctly looked at this phrase, acute or chronic, and you can't separate the acute like he's trying to do here and say acute here means the severity without looking at the exact phrase, which is acute or chronic. The or, meaning a disjunctive conjunction, means that they're alternatives. And if you say we're not going to look at the alternative, you're now not reading, you're taking words out of the policy. And that is a preeminent rule of contract interpretation that you can't render other language meaningless. And that's what his interpretation does. Here's an example. What about, okay, but what about the insured? You know, I mean, I'm having trouble following your reasoning. What about the insured if they're, if, I just don't see how it's unambiguous. And they have a right to be on notice of what sort of behavior would make, would render them ineligible for the accidental death. Well, they have intoxication. And the word intoxication is reasonably understood by a person as a disreportion. I don't reasonably understand intoxication as being a .02 that causes an accident. Well, I don't think that it would be reasonable to say that, and again, the courts have agreed, it's not reasonable to say that it's a .08. You fall the state limit when that's not the language in the policy. Right, but what's your closest case to the facts in this case? Because the closest in purviewing the cases that I could find, I didn't find anything near this level. A .07? I can provide the court... Well, in terms of a case where it said it was acute with these facts. But, Your Honor, the problem there is you're again accepting his argument that severity. But I would like to add this one point. But wouldn't it apply even if we accepted your argument about sudden onset? We still have the problem of trying to define intoxication. Intoxication, and I can get to that. And, and you haven't mentioned the term either, but what about contraproferendum? Doesn't the plaintiff have the advantage of holding the company to a standard which allows the plaintiff to most favorably to the plaintiff? If there is an ambiguity, that is correct, under de novo review. But in this case, the district court said that, let's look at, first of all, this doesn't define it in terms of level intoxication. Now, you know, I apologize for being repetitive here, but this doesn't apply only to driving while intoxicated, any loss to which the intoxication contributes. So, if we were put in the state limit, we couldn't do that. I think a reasonable person seeing this says, wait, intoxication is not limited to drunk driving, then it's not going to have that level. A reasonable person understands, take out of the picture driving, because it's not limited to that. So what does intoxicated mean? Intoxicated means impaired in physical or mental capabilities, and that's what the district court held here. It is unreasonable, and I will provide the site to the case again. There has been a court which said it is unreasonable to impute a state's legal limit like counsel's trying to do. All right, but then we have the modifier acute or chronic. Chronic is off the table, obviously, but taking what you've just identified and applying the modifier acute under the contra-preferendum approach, isn't your opposing counsel's argument reasonable?  You're not taking chronic off the table. Acute or chronic is a phrase in the policy, and while only one applies, you have to interpret acute in the context of acute or chronic. But you're not suggesting that the driver in this case was under chronic intoxication. No, but what I'm saying is... It's either one or the other. It is either one or the other, but you can't say it's temporal, but I'm going to apply the severity, the severity interpretation of acute, because that's what he's asking you to do. But what about the sudden onset, which is your approach? And it was a sudden onset. Within an hour of this crash, he drank three martinis. And I would like to add one point, too. When we're talking about severity, he normally... And I don't think it's the correct interpretation. It's an unreasonable one. But when you look at severity here, even in that context, here's a man who his wife said he only drank one to two drinks when he drank. One or two times a week. One to two. Here he had three within an hour. Actually, within twenty minutes of leaving, he had his last one, if I'm not mistaken. Fifty percent more. And the district court pointed this out. Fifty percent more than he normally drinks. So for him, that is a severely high level compared to what he's normally drinking. But it's not. The context has to be acute or chronic. And the example I was going to make earlier is, let's say somebody says, would you like an apple or orange? They're talking about fruit. You can't say orange in that context is referring to color. It's not. So here, chronic or acute, we're talking about temporal meaning. And I mentioned in my brief that we cited to several cases from this court, all of which have looked at chronic, acute or chronic. The phrase. It appears everywhere. It is a well-known phrase. And it's understood to have a temporal meaning. What about if you're a drunk? But you don't happen to have any alcohol in your system on that date. But as a result of being a drunk, you're just not, you know, you've kind of destroyed some brain cells and you're not as sharp and you're not as... Is that chronic? Would that person be disqualified under chronic? They were not intoxicated. They're not. I don't think they would be considered intoxicated. But if they had .02, they could be still? But those facts aren't even here. In fact, .02 isn't even... I'm just trying to decide how do I read this and know that I'm covered or not covered? You read it by saying, am I considered intoxicated? If I'm impaired, I'm intoxicated. I know I can't get into the... You know, I see, I don't know about here, but I know where I live, there are ads on TV that said buzzed driving is driving while intoxicated. It's against the law. That would tell me, geez, I'm not, you know, I'm not really... I wouldn't consider myself to be overly drunk, but they're telling me that I'm intoxicated enough to be arrested. So in that case, I think it is understood. And I'd like to, if I could make one more point on that too. They rely on their expert, Dr. Clardy, who's a toxicologist, who said that at Mr. Cerrone's level, he would not have been impaired. He would not have been intoxicated. And he relies on, and this page is in the report, this NTSB study. But what Dr. Clardy did, and I think it speaks volumes to the lack of support for his report, he didn't include the abstract on Roman numeral two. And that abstract says, statistically significant risk occurred at .04% BAC. The government studies have realized that at .04, there's a significantly, a statistically significant risk. And people know that. People know that they don't have to be .08 to be intoxicated. In fact, most states say they have a different level. You're suggesting that .04 risk equals intoxication. It equals impairment. That's just to refute their argument that he wouldn't have even been impaired at .06 or .07. He was impaired. He nearly walked into a stationary slot machine. I need to ask you a question, because you offer, you argue a secondary basis for affirmance on the alternative ground that Mr. Cerrone was disqualified from benefits under the controlled substance exclusion because he voluntarily consumed marijuana. And my, what is the evidence that his, that there, that his consumption of marijuana contributed to his death? Because I know that there was an expert that said that marijuana can stay in your body for a period of time. And my understanding of the evidence here is they did a presumptive test, but they didn't do an actual blood test or whatever. They did a presumptive test. Now, the test, and I know I'm going to go over time in this, so I'm just going to... Well, answer that question. Thank you. I appreciate that. So the issue here is, yes, if you look at a strand of hair, you can tell somebody within thirty days has had marijuana. The blood test they did is different. That will show whether it's in the near time. So they did a presumptive test, or they did a test which showed presumptively positive. They did not do the more fuller test. So how could we affirm on that evidence? Well, what happened, well... Well, did the district court make a finding with respect to that? No, the district court did not. They said it wasn't necessary to do so. I think that that means you'd have to at least remand the case back. So, because, for this reason, Dr. Holland said, when you take the intoxication here and add to it the marijuana, it's just going to amplify the loss of motor skills. If, in fact, he was under the influence at the time. If it was just something that happened thirty days ago, it wouldn't amplify it, would it? Are you contending that? No, the thirty days isn't from that test. That test shows the near-term taking of it. What I was saying is, if you take a hair sample, but that wasn't done here. If you take a blood sample and it's positive for marijuana, that shows a near... But we don't have that here, do we? We have... What do we have? It was a blood test. The presumptive? Yes. The presumptive was a blood test. And what does it show? It shows that he was presumptively positive for marijuana use. And our expert has said that when you combine the use of alcohol, especially with marijuana, it's going to make the reactions even slower. But what does his expert say about the presumptive test relative to the other tests? Very interesting. So, their expert, who failed to include that page in his report, which refutes everything he said, said that he was taking ibuprofen-like drugs, and that those ibuprofen-like drugs can give you a false positive for marijuana. The problem is, since the 1970s, that has not been the case. Since the 1970s, they took out that inert ingredient that used to give false positives in ibuprofens and replaced it with something else. So their expert's report is totally unfounded. He doesn't dispute the presumptive. Well, he does. But on a totally incorrect and medically unsustainable ground, he says, oh, it's because he was taking anti-inflammatories. Thank you, counsel. We let you go two minutes over time. I appreciate that. Thank you, Your Honor. Counsel, you have some reserve time. Thank you, Your Honors. First, I'm deeply troubled by ERISA fiduciary coming to this court and saying that they did not, in fact, advance the following argument. Although not defined by the policy, the term acute is unambiguous and is commonly understood to mean of relevance, quote, very serious or dangerous. That is on page 11 of their brief to the district court. They are offering a different definition of acute today, but it's a temporal one. This is very concerning when ERISA fiduciaries are writing language that not even they can settle on a definition. How is Mr. Cerrone supposed to know what this policy excludes when the insurance company, who is a fiduciary, can't settle on a definition? It is ambiguous. What about the marijuana thing? So, Dr. Clardy, ultimately his conclusion is the one that I believe this court was concerned about. We know nothing about, in fact, whether this was a blood test. Well, I think they're asking us to go to that alternate theory. But even if we say, well, we can't do it here, should it be remanded? I don't see any legitimate purpose. The district court didn't do anything. The district court did not reach it. They made no finding with respect to that. That is correct. The district court made no finding. But the facts are undisputed. The presumptive level, the presumptive positive, if, in fact, a positive test, has no evidence of the level of the marijuana. So while counsel asserts here that this is a blood test and thus assumes, without any evidence in the record, that this is of a recent origin, there's no evidence of that in the record. We have no idea when or even if he consumed this. We also don't know if he consumed it voluntarily. And that is, of course, a material term in the exclusion. Well, as I read subsection 7, the level doesn't matter. It's to which the insurance involuntary consumption of an illegal or controlled substance is a contributing factor. There's no level. It still needs to be. No acute or chronic. True, but it needs to be a contributing factor. And if you, I don't know what the science is on it. The district court did not determine whether it was. The district court did not determine that. So, but you still think we can, well, I don't understand your argument. If the district court made no finding. I agree. How can we. And it may be appropriate to remand, except for I would just offer two facts. One, it does need to be a contributing factor. Here we don't know what level it was. And so if it is at a. But that's what you would argue at the district court. We can't do that. Right. And the second one is simply there's absolutely zero evidence that this was voluntarily consumed. And nobody has any evidence to that, nor will they be able to develop it. So there's no basis for the district court to make a finding that he voluntarily consumed this. With that, thank you very much. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Callahan